AtkiNSON, J.,
delivered the opinion of the court:
This suit was brought against the United States under sections 1059 and 1062 of the Revised Statutes to obtain a decree from this court for the sum of $3,957.95 of postal funds which is alleged to have been stolen, without fault or negligence on his part, in June, 1900, from one of the plaintiffs, Edgar Hincks, who was at that time superintendent of the money-order department of the post-office at New Orleans, La.
James R. G. Pitkin was postmaster, and Hincks when he entered upon his official duties gave a bond in the sum of $7,000, payable to the United States, conditioned upon the faithful discharge of his duties as such superintendent, the Fidelity and Deposit Company of Maryland being his security. In the settlement of his accounts with the United States the postmaster was charged with the sum of $3,957.95, it being the amount alleged to have been stolen from said Hincks. Demand was made upon the Fidelity and Deposit Company for said shortage and payment was refused. Suit was then brought in the United States district court at New Orleans upon the bond of Hincks for the recovery of the loss, to the United States, and said suit is .now awaiting the disposition of the case by this court, suit having been brought here May 22, 1901, alleging that the loss occurred without fault or negligence on the part of any of the plaintiffs.
A demurrer was interposed by the defendants to the petition, upon the ground that neither Postmaster Pitkin nor the surety company had privity of interest or any cause of action against the United States upon the facts alleged in the petition; that neither of the parties plaintiff Avas a disbursing officer of the United States under sections 1059 and 1062 of the Revised Statutes, and therefore the court was without jurisdiction. The demurrer was argued and was overruled without prejudice, subject to a subsequent hearing of the case upon the facts.
*455 Plaintiffs’ counsel now concede that the surety company has no standing before the court, and that the petition as to it should be dismissed. Plaintiffs Hincks and Pitkin have departed this life and the administrators of their respective estates have been substituted in their places, and they are, therefore, the remaining plaintiffs in this action for relief.
The two questions upon which the court is required to rule are: (1) Were Postmaster Pitkin and his money-order superintendent disbursing officers of the United States; and (2) if so, was the loss of the $3,957.95 of money-order funds of the United States attributable to the fault or negligence of either or both of them ? Sections 1059 and 1062' of the Revised Statutes read as follows:
“ Sec. 1059. The Court of Claims shall have jurisdiction to hear and determine the following matters:
“ Third. The claim of ’any paymaster, quartermaster, commissary of subsistence, or other disbursing officer of the United States, or of his administrators or executors, for relief from responsibility on account of capture or otherwise, while in the line of his duty, of Government funds, vouchers, records, or papers in his charge, and for which such officer was and is held responsible.”
“ Sec. 1062. Whenever the Court of Claims ascertains the facts of any loss by any paymaster, quartermaster, commissary of subsistence, • or other disbursing officer, in the cases hereinbefore provided, to have been without fault or negligence on the part of such officer, it shall make a decree setting forth th^ amount thereof, and upon such decree the proper accounting officers of the Treasury shall allow to such officer the amount so decreed, as a credit in the settlement of his accounts.”
We are clearly of the opinion that plaintiff Hindis, who was only a superintendent of the money-order division and acting wholly under the authority and direction of the postmaster, was not a disbursing officer of the United States under the sections of the Revised Statutes above quoted. The Post-Office Department had no account with him in any manner as an officer of the Government, consequently no credit could be allowed to him by the Auditor for the Post- *456 Office Department, nor can he be allowed, for the same reason, credit by this court for the funds alleged to have been stolen from him.
As to losses in post-offices by robberies and other casualties, provision is made specifically as to the manner in which relief to postmasters (not clerks or assistants) can be obtained. The act of March 17, 1882 (22 Stat. L., 29), as amended by the act of May 9, 1888 (Supp. R.. S., 91, 585-586), as amended by the act of June 11, 1896 (29 Stat. L., 458), pruvides:
“ That the Postmaster-General be, and he is hereby, authorized to investigate all claims of postmasters for the loss of money-order funds, postal funds, postage stamps, stamped envelopes, newspaper wrappers, ancl postal cards belonging to the United States in the hands of such postmasters resulting from burglary, fire, or other unavoidable casualty, ancl if he shall determine that such loss resulted from no fault or negligence on the part of such postmasters, to pay to such postmasters or credit them with the amount so ascertained to have been lost or destroyed, and also to credit postmasters with the amount of any remittance of money-order funds, or postal funds, made by them in compliance with the instructions of the Postmaster-General, which shall have been lost or stolen while in transit by mail from the office of the remitting postmaster to the office designated as his depository, or after the arrival at such depository office, and before the postmaster at such depository office has become responsible therefor: Provided, That no claim exceeding the sum of $10,000 shall be paid or credited until after the facts shall have been ascertained by the Postmaster-General and reported to Congress, together with ■ his recommendations thereon, ancl an appropriation made therefor.”
In the case of the United States v. Fordyce (122 Fed. R., 962), which is in all essential points similar to the case at bar, it was held, we believe correctly, that—
“ It may be added that the only way provided by law for a postmaster to obtain relief in cases of robbery or larceny is by applying to the Postmaster-General, under the provisions of the act of May 9, 1888 (25 Stats., 135), c. 231 (U. S. Comp. St. 1901, p. 2616), in which cases if the evidence is satisfactory to that officer, he may, in his discretion, allow the postmaster credit for the amount thus lost. But with this exercise of the grace and favor of the United States in such cases the courts have nothing to do. It is commit *457 ted to another tribunal, which alone has authority in the premises, and that, too, as a matter of discretion which the courts have no power to control in that officer nor to exercise themselves.”
Nor do we believe that Postmaster Pitkin was a disbursing officer of the United States under said sections 1059 and 1062 of the Revised Statutes. It is true that this court has held in Hobbs's case (17 C. Cls. R., 189) that “ the disbursing officers’ act” (secs; 1059 and 1062 R. S.) is not limited to officers of the Army and Navy, but also extends to disbursing officers of the Executive Departments as well. This Anew Ave adhere to as the correct construction of this statute. Under the la>v of noscitur a sociis, the words “ other disbursing officer ” in this act must relate to the same class of disbursing officer, AA'hich had been previously enumerated, because it is universally agreed that when general words follow particular and specific words the former must be confined to things of the same kind or class. (Sutherland on Statutory Construction, secs. 268-270.) Departmental disbursing agents, whose only business is to disburse the funds of the Government, are, as was held in Hobbs's case (supra), as much disbursing officers, under the statute, as “ paymasters, quartermasters, and commissaries of subsistence." But postmasters, Avho disburse Government funds to their employees or pay out funds on money orders draAvn upon their offices, can not be regarded as of the same class ■of officers whose duties are confined exclusively to disbursing the funds of the United States. Consequently we conclude that neither Postmaster Pitkin nor the superintendent of the money-order pepartment under his control can be classed as coming Avithin the provisions of the “ disbursing officers’ act.”
This conclusion, we think, is strengthened by the fact that the act of May 9, 1888 (supra), provides that the Postmaster-General shall investigate all claims of postmasters for the loss of money-order funds, postal funds, etc., and if the facts show that such losses resulted through no fault or neglect of the postmaster, credit may be allowed to him for such amounts as may be proved were actually lost. Section 1059, Revised Statutes (supra), authorizes this court to make *458 similar investigation and allowance under like circumstances to any disbursing officer of the United States. Had the Congress intended to class postmasters as “ other disbursing officers ” of the Government, a double remedy for relief would be extended to them. That is to say, they could proceed as they saw fit to elect, either under section 1059, through this court as a medium, or before the Postmaster-General under the act of May 9,1888 (supra), which became a law twenty-two years after the adoption of section 1059 of the Revised Statutes. We can not believe that the Congress ever intended to refer this class of cases to this court for adjudication, for the reason that the act of May 9, 1888 (supra), was enacted for the special purpose of providing for their disposition, and hence a double remedy is clearly unnecessary. Inasmuch, therefore, as the court is without jurisdiction in the case before us, there is nothing left for us to do but to dismiss the petition. But aside from this, we may add that the findings show plaintiffs would not be entitled to recover, because they were not “ without fault or negligence.”
Petition dismissed.